# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4393 | **DATE** | 12/17/2004 |
| **CASE TITLE** | VICTORIA BENKOVITCH vs. eMED MONITORING, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    Plaintiff's motion (5-2) to dismiss the counterclaim is granted. Plaintiff's motion (5-1) for judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | DEC 2 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIKTORIA BENKOVITCH,

    Plaintiff,

v.

eMED MONITORING, INC.,

    Defendant.

No. 04 C 4393
Judge James B. Zagel

DOCKETED
DEC 2 0 2004

## MEMORANDUM OPINION AND ORDER

This case arises out of a $100,000 promissory note entered into by Plaintiff Viktoria Benkovitch and Defendant eMed Monitoring ("eMed"), on February 17, 2003, the terms of which are as follows:

> For value received, the undersigned, eMed Monitoring, Inc., an Illinois corporation ("Maker") promises to pay to the order of Viktoria Benkovitch ("Payee")...the principal sum of one hundred thousand and 00/100 dollars, together with interest on the outstanding principal balance from the date hereof at the rate of nine percent (9%) per annum (computed on a 360-day year).
> The principal of this Note is due and payable, with any accrued and unpaid interest thereon, on April 17, 2004. This note may be prepaid, at any time, in whole or in part, without penalty. Any such payments shall be first applied to interest and the balance to the principal.
> In the event of a default by Maker in the payment of the principal of $100,000 on the date of maturity or any approved grace period thereafter or any agreed upon extensions, the Holder of this Note shall be entitled to convert said $100,000 into a five percent (5%) of all of the issued and outstanding stock of the Maker in lieu of payment of said $100,000.

(Plaintiff's Exhibit A)

Benkovitch brought the instant suit seeking payment of the $100,000 plus interest and costs. eMed has asserted an affirmative defense of reformation and a counterclaim, alleging that



Benkovitch's husband, Jack Kachkar, approved an equity investment of $500,000 but never provided more than the $100,000 Note from Benkovitch, causing damage to eMed in excess of $400,000.

I have before me Plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and Plaintiff's motion to dismiss Defendant's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). I will deal first with Plaintiff's request for judgment on the pleadings. Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and the answer. Fed. R. Civ. P. 12(c). On a Rule 12(c) motion, the Court accepts as true all well-pleaded material allegations of the non-movant. *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1091 n. 2 (N.D. Ill. 1991). Judgment on the pleadings is appropriate when, based on the facts admitted, no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Cagan*, 774 F. Supp. at 1091.

Benkovitch claims there is no material issue of fact as to the terms of the Note or as to eMed's default under those terms. eMed admits to the terms of the Note, that it signed and delivered the Note, that it received $100,000, that Benkovitch demanded payment after the expiration date set forth in the Note, and that eMed refused the demand.

"The meaning of a written contract is ordinarily a question of law and not one of fact." *Brodsky v. L&R Autobody Specialty, Inc.*, No. 88 C 6657, 1990 U.S. Dist LEXIS 8347 at *6-7 (N.D. Ill. June 29, 1990) (quoting *Chicago Daily News, Inc. v. Kohler*, 196 N.E. 445, 451 (1935)); *See Also Cagan* at 1095 (citations omitted). Where the contract is "unambiguous and contains no uncertain terms, interpretation of the contract is a question of law for the court." *Boulevard Bank Nat'l Assoc. v. Baldwin*, No. 90 C 1988, 1991 U.S. Dist. LEXIS 1093 at *5

(N.D. Ill. Jan. 31, 1991). In such a case, the court "cannot consider any evidence outside the four corners of the contract." *Id.* (*citing A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.*, 477 N.E.2d 30, 33 (Ill. App. Ct. 1985)).

In this case, the terms of the Note clearly and unambiguously set forth all the material elements of a loan agreement. *See Boulevard Park,* 1991 U.S. Dist. LEXIS 1093 at *2 (material elements of a loan agreement are the principal amount, interest rate, and the manner and duration of repayment). As is demonstrated by the Note's language, it does not contain anything which is novel or particularly interesting; it is a standard form promissory note. The Note provides for a principal amount of $100,000, which was given to eMed, an interest rate of 9% computed annually, a payment date of April 17, 2004, early payment without penalty, and a possible conversion of the debt into 5% of eMed's outstanding stock.

While eMed does not attempt to argue that the language of the Note is itself ambiguous, it does argue that the Note should be reformed to reflect the true understanding of the parties at the time of the agreement. eMed argues that the Note must be viewed in its context as only one part of a larger equity purchase arranged by Benkovitch's husband, Jack Kachkar, and should be reformed to include the larger deal.

To state a claim for reformation of contract due to mutual mistake, eMed must show:

> through clear and convincing evidence that: (1) there has been a meeting of the minds resulting in an actual agreement between the parties; (2) the parties agreed to reduce their agreement to writing; and (3) at the time the agreement was reduced to writing and executed, some agreed upon provision was omitted or one not agreed upon was inserted either through mutual mistake or through mistake by one party and fraud by the other.

3

*Ind. Ins. Co. v. Pana Comty Unit Sch. Dist. No. 8,* 314 F.3d 895, 904 (7th Cir. 2002). Claims of mutual mistake are subjected to the heightened pleading standards of Fed. R. Civ. P. 9(b). *Cagan,* 774 F.3d at 1097. Moreover, mutual mistake is rarely found in commercial transactions between sophisticated parties. *See RS&P/WC Fields L.P. v. BOSP Invs.,* 829 F. Supp. 928, 969 (N.D. Ill. 1993). "The doctrine of mutual mistake is limited to cases in which both parties were reasonable in their inconsistent interpretations; cases, in other words, of irremediable ambiguity; more precisely, cases in which neither party is more at fault than the other." *Praxair, Inc. v. Hinshaw & Culbertson,* 235 F.3d 1028, 1034 (7th Cir. 2000). Disregarding unambiguous language in a written agreement "is not done lightly; where the language is unambiguous, we ignore it only in the rare case where literal application of the text would lead to absurd results or thwart the obvious intentions of its drafters." *Grun v. Pneumo Abex Co.,* 163 F.3d 411, 421 (7th Cir. 1998).

In this case, eMed is seeking to reform the Note by changing the holder from Benkovitch to Kachkar and by adding terms to demonstrate its relation to the larger equity purchase. In essence, eMed is asking me to toss out this simple, straightforward promissory note and put in its place a much more complex writing. The defense of reformation cannot be used for this purpose. As discussed in detail above, reformation is limited to those circumstances where the parties are reasonable in their interpretations of the existing agreement but where the parties intended the same terms to mean different things or where there was an error in drafting the agreement. *See Briarcliffe Lakeside Townhouse Owners Assoc. v. Wheaton,* 524 N.E.2d 230, 235 (Ill. App. Ct. 1988).

Even if this was the type of situation where reformation was appropriate, it would still fail, as eMed has not met its pleading requirements. Specifically, eMed has failed to allege that there was a meeting of the minds with respect to the larger equity purchase. Instead, it states that the terms were still being negotiated in May 2004, a date after which the Note had come due. (See Def. Countercl. ¶¶ 5 & 9). Since there was no claim that an agreement had been made between the parties, I must find that eMed has not sufficiently pled a defense of reformation. Accordingly, I find that the Note is clear and unambiguous on its face and should be enforced as written.

As for eMed's Counterclaim, I find that it is also deficient and should be dismissed. The Counterclaim apparently alleges a breach of an obligation of Kachkar, not Benkovitch. In the Counterclaim, eMed alleges that Kachkar planned to make his investment "in various entities, trusts and individuals, including his wife, who Defendant believes is the Plaintiff" (Countercl. ¶ 2) and that Benkovitch was to be used by Kachkar as a "nominal party to fund the promises that [Kachkar] made to eMed." (Countercl. ¶ 8). According to eMed, Kachkar approved the equity investment (*Id.* at ¶ 1), Kachkar promised to make an investment (*Id.* at ¶ 8), and eMed waited for the transfer of funds (*Id.* at ¶ 9). eMed also alleges that it repeatedly asked Kachkar to send funds and to consummate the equity purchase agreement. (*Id.*) Since eMed has failed to allege a basis for a claim against Benkovitch, who is the sole opposing party in this case, it must be dismissed for failure to comply with Fed. R. Civ. P. 13.

Benkovitch's Motion for Judgment on the Pleadings is GRANTED. I find for Benkovitch and order eMed to make payment in the amount of $100,000 plus interest. Benkovitch's Motion to Dismiss eMed's Counterclaim is also GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: 16 Dec 2004